# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| **ANNJ MARIE BENJAMIN** | * | **CIVIL ACTION NO. 11-0486** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Annj Marie Benjamin, born March 28, 1967, filed applications for a period of disability, disability insurance benefits, and supplemental security income on November 17, 2008, alleging disability as of April 1, 2008, due to diabetes mellitus Type II and right leg amputation.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability.

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial

evidence, based on the following:

**(1) Records from LSU University Medical Center ("UMC") dated June 20, 2007 to May 13, 2008**.  On June 20, 2007, claimant had run out of insulin. (Tr. 211).  Her CBG was 401.  The doctor informed her of the necessity of taking her medication.

On August 15, 2007, claimant's diabetes was not controlled.  (Tr. 202).  Her hypertension was well-controlled.

On April 3, 2008, claimant presented with poorly controlled diabetes with worsening cellulitis and recent formation of an abscess on the right fourth toe after bumping her foot on the sofa.  (Tr. 234-43).  She was not checking her blood glucose level regularly.  (Tr. 241).  Her right fourth toe was amputated on April 6, 2008.  (Tr. 222, 244).  On April 14, 2008, she had a below knee amputation.  (Tr. 229-30).

On May 20, 2008, claimant reported "phantom pain," but no discomfort in the surgical area.  (Tr. 213).

**(2) Records from Dynamic Orthotic Services, Inc., dated May 14, 2008 to July 9, 2008**.  On May 14, 2008, claimant was seen for evaluation for right BK prosthesis.  (Tr. 272).  She was seen for fitting and delivery of the prosthesis on June 27, 2008.  (Tr. 275).  She did little ambulating due to soreness.

Case 6:11-cv-00486-RFD   Document 19   Filed 04/23/12   Page 3 of 9 PageID #:  543

On July 9, 2008, claimant reported that she was doing little walking at her home. (Tr. 276). She ambulated well in parallel bars with only one hand assisting. She had no pain. Her leg was shortened by ½ inch.

**(3) Records from UMC dated July 8, 2008 to November 24, 2008**. On August 12, 2008, claimant was doing well with no complaints. (Tr. 287). Her wound had entirely healed, and she had no swelling, drainage, or infection. She was using her prosthesis.

**(4) Physical Residual Functional Capacity ("RFC") Assessment dated December 22, 2008**. The examiner found that claimant could lift 20 pounds occasionally and 10 pounds frequently; stand, sit, or walk about six hours in an eight-hour workday, and had unlimited push/pull ability. (Tr. 290). She could climb ramps/stairs and balance occasionally, never climb ladders/ropes/scaffolds, and never stoop, kneel, crouch, or crawl. (Tr. 291).

**(5) Claimant's Administrative Hearing Testimony**. At the hearing on November 20, 2009, claimant was 42 years old. (Tr. 301). She testified that she was 5 feet 7 inches tall, and weighed about 250 pounds. She said that her weight fluctuated.

Claimant stated that she lived with her husband and two children, ages two and nine. (Tr. 301-02). She reported that she had gone to school through the 11th

3

grade. (Tr. 302). She said that she had last worked as a personal care attendant until March 20, 2007. Prior to that, she had worked as a personal care attendant at another company, worked as a cook at a daycare center and at Popeye's, and worked at a children's day care. (Tr. 303-04).

Regarding complaints, claimant testified that she had trouble walking, could not sit very long, and had trouble balancing. (Tr. 305). She complained that walking aggravated her pain. She also stated that she had trouble sleeping. (Tr. 307). She reported that her medications made her drowsy and a little dizzy. (Tr. 308).

As to activities, claimant testified that she ate breakfast, got dressed, sat up a while and watched television, helped with her two-year-old, and shopped at the grocery store in a scooter. (Tr. 306). She said that she attended church sometimes. She reported that she tried to fold clothes and read, but her vision became blurry sometimes. She drove very little. (Tr. 307).

Regarding restrictions, claimant testified that she could walk for less than a block. (Tr. 308). She reported that she could stand about five minutes, and sit for 30 minutes to an hour. (Tr. 309). She said that she could lift about 30 pounds. Her hands became numb occasionally. She had no problems getting along with others.

4

**(6) Administrative Hearing Testimony of Harris N. Rowzie, Vocational Expert ("VE")**.  Mr. Rowzie classified claimant's past work as a fast food cook as medium, a companion as light, and a child monitor as medium.  (Tr. 316).  The ALJ posed a hypothetical in which he asked the VE to assume a claimant of the same age, education, and vocational experience; who was limited to sedentary work, would be unable to walk on uneven ground, would be unable to climb or work at heights, and would have an opportunity to change positions between sitting and standing once an hour.  In response, the VE testified that claimant could not perform her past work.  However, he stated that she would be able to work as a telephone quotation clerk, of which there were 91,000 positions nationally and 1,300 statewide, and election clerk, of which there were 145,000 positions nationally and 1,800 statewide.  (Tr. 317).

When the ALJ changed the hypo to a claimant who would miss work on an irregular basis at least two to three days a month due to her conditions, Mr. Rowzie testified that there were no jobs available.  (Tr. 317).

**(7) The ALJ's findings**.  Claimant argues that: (1) the ALJ failed to meet his burden of proof at Step 5, because his hypothetical question to the VE failed to include limitations from the ALJ's own RFC finding; (2) the ALJ failed to find that claimant's diabetes was a severe impairment despite the fact that she had a leg

5

amputated due to diabetic complications; (3) the ALJ's RFC finding was not supported by substantial evidence, as it does not comply with SSR 98-6p, is based on undeveloped medical evidence, and lacks any medical opinion support, and (4) the ALJ failed to fulfill his duty to develop the record; subsequently obtained medical evidence and a subsequent, favorable ALJ ruling demonstrate that she was prejudiced by the error.  Because I find that the ALJ erred in assessing her residual functional capacity, I recommend that this matter be **REVERSED** and that the claimant be awarded benefits.

As to the first argument, claimant asserts that the ALJ erred in failing to include her limitations of never stooping, kneeling, crouching, or crawling in the hypothetical to the vocational expert.  While the ALJ noted in the decision that he gave no weight to the state agency non-physician adjudicator's conclusion (including that claimant could never stoop, kneel, crouch, or crawl), he specifically found in Findings of Fact and Conclusions of Law No. 5 that "claimant has the residual functional capacity to perform sedentary work . . . except that she is unable to walk on uneven ground, she must alternate sitting and standing, she can occasionally climb stairs *but never climb ladders, ropes, or scaffolds, and she can never stoop, kneel, crouch, or crawl*."  (Tr. 13-14).

In his hypothetical to the vocational expert, the ALJ failed to include the limitations that claimant would never be able to stoop, kneel, crouch, or crawl. (Tr. 316).   Social Security Ruling 96-9p, which discusses the implications of a residual functional capacity for less than a full range of sedentary work, provides, in pertinent part, as follows:

> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. *A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply*, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work.  Consultative with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

(emphasis added).

The Fifth Circuit has determined that the Social Security Administration's rulings are not binding on the court, but they may be consulted when the statute at issue provides little guidance.  *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The Fifth Circuit has frequently relied upon the rulings in evaluating ALJs' decisions.  *Id.* (*citing Newton v. Apfel,* 209 F.3d 448, 456 (5th Cir.2000)(relying on SSR 96-2p); *Scott v. Shalala,* 30 F.3d 33, 34 (5th Cir.1994) (relying on SSR 83-12); *Spellman v. Shalala,* 1 F.3d 357, 362 (5th Cir.1993) (relying on SSR 83-20)).

Here, the regulations expressly provide that "complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply."  Despite the ALJ's explicit finding that claimant would never be able to stoop, he failed to include this limitation in his hypothetical to the vocational expert.  It is well established that "[u]nless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably *all disabilities of the claimant recognized by the ALJ*, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions  . . . a determination of non-disability based on such a defective question cannot stand."  (emphasis added).  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (*quoting Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)).  Thus, the ALJ's failure to include this limitation in the hypothetical was error.

Accordingly, it is my recommendation that the Commissioner's decision be **REVERSED**, and the claimant be awarded benefits.  The undersigned recommends that April 1, 2008, which is the onset date, be used as the onset date for the commencement of benefits.

Under the provisions of 28 U.S.C. §  636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION, 79 F.3D 1415 (5TH CIR. 1996).**

Signed April 23, 2012, at Lafayette, Louisiana.

C. Michael Hill

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE